Good morning. My name is Yung Cho. I'm the attorney for Appellant Clyde Moisa. How are you? Good. How are you? Do you need a pen? Here you go. I know. It's always awful not to have something to write with when you're... Unfortunately, this is not the first time. I know. I've been there. Thank you. Okay. Three arguments. I'm going to concede at this point my third argument I'm not very thrilled with. What argument are you conceding? The new material evidence argument. That's a new case, in effect. Sorry? That would be a new case. Evidence that was developed after the ruling by the ALJ would be the basis for a new case, but not a basis for finding error in this decision. Under the case law, that appears to be the case. The other two arguments, though... So what's your best argument here? I think it's... This is a serious case. Yes. I'm just a little nervous, so please bear with me. It's his pain testimony. He basically described having problems that are congruent with the evidence. There has been no evidence of blingering or any of the credibility findings that they employ to say whether the person is credible or not. Was the ALJ required to accept the pain testimony in the absence of direct evidence refuting it, given the state of this record? Is he... Was the ALJ required to accept the pain testimony in the absence of direct evidence to refute it on the state of this record? I mean, he has to articulate clear and convincing reasons. Well, is he required to accept it in the absence of direct evidence to refute it? No. The ALJ is never going to be bound, and under any circumstance that I can imagine, to accept a person's testimony as to how he is limited in this fashion. But, you know, then comes the rules. Is he malingering? No. Is there evidence reasonably likely to produce the symptoms? Yes. He has to articulate clear and convincing reasons. So then we go to the reasons as to whether they are clear and convincing. So did he articulate reasons for rejecting the evidence? Yes, he did. What were they? Okay. First he said the x-rays don't show anything to suggest that he can't do anything more than medium work. Well, that's a different issue. You're not talking about pain, right? Did he articulate reasons for rejecting the pain testimony? Right. And these are the reasons that he's that he's articulated based on the evidence to say that his testimony is likely or less likely. So his observation of the x-ray, which is something that I have disputed, the doctor who said that he could do medium work didn't even look at it. And the commissioner has not disputed that point. Well, I don't see how that relates to pain. That relates to the interpretation of the x-ray. That doesn't necessarily mean that he doesn't suffer pain. Right. And I think that's part of my point is that he's reviewing these and the commissioner's papers as well. They're saying that the doctor didn't say this. The doctor didn't say that. And the doctor didn't say that. But as the case law has said, you can't just look at the object of evidence to say whether this person's testimony is credible or not. You have to look into the other factors like, you know, credibility findings. You know, are there inconsistent statements? Did he did he talk about stuff that for which he didn't get treatment for? Is he non-compliant with medication? Did he not go see any doctors? You know, these are some reasons that the ALJ can articulate that can be clear and convincing, which was not done in this case. All right. The other one is the his residual functional capacity. He says that he could do medium work. And really, he's looking at the commissioner's own examining doctor, Dr. Myatt and the commissioner's non-examining doctor, who also said that he could do medium exertion now. But there was a proliferation of this of Mr. Moyse's condition, which is the diabetic polyneuropathy. And their their report and their opinions, the ALJ ultimately found that they were under inclusive. The ALJ did find that they could do that. He could do medium work. But he also found additional limitations, which indicates that the ALJ was not wholly. You know, he did he did not want to credit their opinions. In total, there were some deficits in their review of his functioning capabilities. Let's see. The other thing goes to substantial evidence. When you talk about somebody lifting 50 pounds, 25 pounds, you have a person with basically the nerves in his hands and his feet. They're basically diseased. And it's like when you, you know, slam your elbow and you hit your funny bone and you get that sensation, that pain. He's got that in his hands. He's got that in his feet. And he's also got an X-ray in his back showing that some of the nerves going out from the spinal column are are being pinched. So you ask this person to lift 50 pounds. I mean, at best you can see that. Well, I can see that he's probably going to drop it and smashing bones in his feet. I don't think a reasonable person would accept that as his residual functional capacity. And that is the basis on which we're that I'm alleging that the L.J.'s residual function capacity assessment is not supported by substantial evidence. He was to reserve the rest of your time for a bottle, perhaps. Sure. Yes. Thank you. Good morning, Your Honors. I'm Geraldine Goldseth. I represent the appellee, the commissioner of Social Security. How are you? I'm fine. Thank you. L.J. didn't do such a hard job on credibility findings, did he? Well, you've had better cases than I have. I have had better cases, yes. But I was thinking about the credibility assessment. Not much there. You're talking about the pain. Yes. Yes. Excess pain. And again, the testimony for lack. What is what were his words for lack of medical evidence to support the pain testimony? Right. That was one of the reasons. It's not the law of the circuit. It's not wrong. He said was in the absence of medical evidence to support such allegations. I cannot accept this testimony. That's the only basis on which you reject the pain testimony. Right. If that were the only basis that would be wrong under the law of this circuit. However, because because established that he had impairments that could reasonably correctly cause that pain. Correct. Okay. Now, what other evidence is there on the basis of which he could reject the pain testimony? The L.J. I think two things to keep in mind before I go to the specific paragraph in which he discusses excess pain is that the L.J.'s overall analysis also has to be taken into account where he goes through the medical evidence. That leads on to other issues. Yes. On a transcript page 16 16 on the top of the page. The bottom of the page is a 16 on the top and a 12 at the bottom. Is that the page you're looking at? Page 16 on the top. Okay. I have three numbers on that page for 16 or 12. The one that were the top line of the page is a claimant sought intermittent treatment from Harbor UCLA. That's correct. Very good. Now, tell us where on the page you're reading. In making this assessment, the undersigned must consider all symptoms, including pain. Fifth paragraph. One, two, three, four, five. Yes. As Judge Forster pointed out, the L.J. first notes the lack of cooperating objective medical evidence. But then he does go on to say that no treating or examining physician had assessed any disabling limitations. Well, he doesn't say the word disabling, but he says limitations. Well, credibility assessments, as Mr. Cho was pointing out, can be made on, you know, many different factors. And I was inconsistencies in statements, lack of compliance with treatment are factors that have been articulated by this court in the past. No, but I think each of these cases are so factually different that what might not be sufficient reason in another case at a time. So where else does the L.J. point to evidence on the basis of which he rejects the pain testimony? Well, this is the analysis that where that he provides with. With regard to his diabetes, no treating or examining physician had assessed any limitations. That's the fifth paragraph, and it is the second to the last sentence in the fifth paragraph. Correct. But that does go to whether a claimant has disabling pain, because a medical doctor's opinion can not only go to functional limitations, but can also go to, you know, what they think in their experience and based on their knowledge of this patient. Okay, all he says is limitations. Correct. Let me ask you something else. Didn't the claimant testify that he had to lie down during the day from time to time because of the pains? Correct. He testified that his capacity became reduced during the day. Yes. Now where does the L.J. deal with that? I don't know if he actually cites that evidence for that part of the testimony. He doesn't. He acknowledges the back pain and the numbness and the limitation on his sitting and standing ability. That's true. He didn't cite expressly the testimony about needing to lie down. So he didn't deal with that issue specifically? He didn't accept it or reject it? Not that specific testimony. Okay, now let's take a look at the vocational expert's testimony. Are you familiar with that? Yes. And what did he say about the claimant's necessity of having to lie down? It would preclude his ability to perform jobs. That's correct. So if you accept the lying down testimony, then he would be totally disabled under the testimony of the B.E.? That's correct. And the L.J. didn't deal with that? Well, the L.J. rejected his overall testimony. Well, he rejected the specifics of the pain, debilitating back pain and enumerates, but he doesn't reject the testimony that he had to lie down during the day from time to time because of the pains. Well, if you're rejecting one's excess pain and keeping in mind, and it's not denying that this man does indeed experience some symptoms, but when you reject excess pain, he's also rejecting the more extreme limitations resulting from that. I mean, this gentleman says he has to lie down often, but nowhere in the record does it say that. And it's not a matter of the absence of corroborating clinical findings, but the few treatment notes that there are, this gentleman isn't going into his doctor and saying, I just can't stand this anymore. You have to help me. I have to lie down. You're not the L.J. The L.J. didn't do that. That's correct. But I think that the L.J., again, I mean, as I directed the Court's attention to the fifth paragraph here, one also has to look at his entire analysis. For this claim, Mr. Moisa was claiming disability beginning in 1996 through February 2000, and in the beginning we have a worker's compensation injury based on a hernia and a low back impairment, but he received very minor conservative treatment for that, and the orthopedic surgeon released him, not to his truck driving work, which was considered heavier, but had released him back to some form of work back in 1997. And then there's really the absence of any medical records until some treatment with Dr. Senra in 1999. And again, I may be articulating this a little more clear than I would have liked the L.J. to have done, but I think, again, it has to be. I mean, the L.J. is the fact finder in this case, not counsel in the appellate court, and he didn't make the fact findings that are necessary to sustain the rejection of the pain testimony, and he didn't make the fact findings that were necessary to reject the specific testimony about his knee having to lie down from time to time during the day, which disabled him altogether, according to the L.J.'s own expert. So none of that was dealt with, so I don't see how we can say that this opinion was supported by substantial evidence. Well, again, I believe that the fact that this record is pretty minimal and inconclusive has to be a legitimate factor in the L.J.'s analysis. The L.J. found that the excess pain was not credible, and he's basing that on evidence, and again, not just lack of clinical findings or objective medical findings. But he's also stating that as he's summarizing the evidence, he's noting the consultative examiner, who believed that even considering the diabetes at that point as of January 1999, that he could perform a range of work, and also finding that the treatment notes don't necessarily conflict with that. So again, I would ask that the Court look at the entire decision based on the record. Okay. Thank you. I don't think I really have much to add unless there are any questions. Okay.
judges: Noonan, Kozinski, Schwarzer